IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KE XIANG CHEN, #A73 181 945 * | |
| Petitioner, | |
| v. * | CIVIL ACTION NO. AW-09-2064 |
| MARION DILLIS * | |
| Respondent. | |
| *** | |

**MEMORANDUM**

I.  INTRODUCTION

This counseled 28 U.S.C. § 2241 Petition for habeas corpus relief and Emergency Motion for Stay of Removal were filed on August 5, 2009. For reasons to follow the court finds that it has no jurisdiction over Petitioner's request for a stay or deportation pursuant to 8 U.S.C. § 1252(a). Consequently, the Emergency Motion to Stay of Removal shall be denied and the case shall be transferred to the United States Court of Appeals for the Fourth Circuit.

II.  BACKGROUND

By way of background, on August 5, 2009, counsel for petitioner Ke Xiang Chen ("Chen") filed a habeas petition and complaint for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2241, 2201, & 2202 seeking to enjoin Chen's deportation to the People's Republic of China. Paper No. 1. The Petition alleges that Chen was taken into custody by Immigration and Customs Enforcement ("ICE") on June 16, 2009, while on mandatory supervised release. Although Chen was immediately released from ICE, he believes his removal will be effected within days or weeks of August 7, 2009, when he is to report to authorities for his next interview. *Id.*

According to the Petition, Chen entered the United States without inspection in January of 1993 and was granted voluntary departure on October 15, 1999, by an immigration judge ("IJ") after

his asylum application was denied.  His appeal to the Board of Immigration Appeals ("BIA") was denied on April 1, 2002, and his motion to reopen was denied on June 26, 2003.   Paper No. 1.  Petitioner claims that under immigration law his failure to voluntarily depart turned the IJ's order into an order of deportation.  *Id*.  Petitioner also claims that in February of 2002, he filed his first I-485 application for adjustment status based upon his asylee status of at least one year.   He asserts that during the pendency of that application he was arrested by ICE in 2007.  According to the Petition, on January 15, 2008, Petitioner filed a second I-485 application and on April 10, 2008, he filed an I-212 application to reenter after deportation.  After receiving notice from immigration authorities, Petitioner appeared for an immigration interview on his first I-485 application on June 16, 2009.  He claims that while the interview was being conducted,  three ICE officers showed up and arrested him for immediate removal.  Petitioner claims that although he was released on humanitarian grounds[1] and was told to resume monthly reporting, he was warned that he was to be removed due to the October 7, 2009 expiration date of his Chinese passport.

The primary basis for challenging his arrest,[2] continued mandatory supervised release, and prospective deportation rests with Petitioner's claim that he attained derivative asylee status through his wife on July 10, 2000, with the approval of an I-730 petition and that he "should be and will be granted adjustment of status based on his asylee status."   He seemingly claims that his asylee status should "overwrite" the immigration judge's deportation order.

Petitioner asserts he is raising substantive constitutional grounds in this eleventh hour petition.  He does set out general substantive and procedural due process claims regarding his

---

[1]    Petitioner claims that he was released because his wife had abandoned their child and he had become the sole custodian for their sixteen-year old son.

[2]    Petitioner is not in ICE custody, but was released on mandatory supervision on June 16, 2009 for "humanitarian" reasons.  It is Petitioner's contention that as ICE personnel have obtained his travel documents to China and he is next scheduled to report for an ICE interview on August 7, 2009, he will

continued supervised release (freedom from bodily restraint and his right to be heard).  His actual claims for relief, however, are not cloaked in constitutional fabric.  Rather, they are raised on pure and simple equity arguments that his deportation before his adjustment application is adjudicated will cause "irreparable harm" to him and to his family.

III.   ANALYSIS

On May 11, 2005, President Bush signed the Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub.L. No. 109-13, 119 Stat. 231 (2005).  Included within this far-reaching legislation is the Real ID Act of 2005 or "RIDA." RIDA, now codified under 8 U.S.C. § 1252(a), substantially modifies the route aliens must take to seek judicial review of an order of removal.

In pertinent part the provision provides that:

[Notwithstanding....section 2241 of title 28, United States Code, or any other habeas corpus provision,....a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issues under any provision of this Act....For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and "jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651....

Pursuant to RIDA or 8 U.S.C. § 1252(a)(5), authority to consider a challenge to a final order of removal is within the sole and exclusive jurisdiction of the circuit courts.  *See Schmitt v. Maurer*, 451 F.3d 1092, 1094 (10th Cir. 2006); *Elia v. Gonzales*, 431 F.3d 268, 273, n. 5 (6th Cir. 2005); *Alvarez-Barajas v. Gonzales,* 418 F.3d 1050, 1052 (9th Cir. 2005); *Tilley v. Chertoff*, 144 Fed. Appx. 536, 538 (6th Cir. 2006); *see also Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (9th Cir. 2006) (RIDA restores circuit court jurisdiction to review constitutional claims or questions of law).

While Petitioner is not directly challenging his order of removal, he is for all intents and purposes seeking to invalidate the final order of removal by seeking a stay of that order while his

---

undoubtedly be taken into custody at that time and deported soon after.

adjustment application is pending. In *Nnadika v. Attorney General of the United States*, 484 F.3d 626 (3rd Cir. 2007), the petitioner filed a petition in the district court seeking to enjoin the respondents from deporting him and seeking reconsideration of his form I-730 asylee relative petition. The district court denied the petition for habeas corpus insofar as it challenged petitioner's detention and transferred the remainder of the petition to the United States Court of Appeals for the Third Circuit pursuant to the Real ID Act. *See Nnadika*, 484 F.3d at 629-30.

Petitioner is not physically in detention, but is on supervised release. A challenge to his custodial situation is intertwined with his removal order and should be considered as a challenge to the removal order for § 1252(a)(5) jurisdictional purposes. *See Essuman v. Ganzalez*, 203 Fed. Appx. 204, 211-12 (10th Cir. 2006). Here, Petitioner acknowledges that he is under a final order of removal that ICE is attempting to execute. He requests that the court stay the final removal order pending a ruling on his adjustment application. I find that this Petition is a challenge to the final removal order, over which I do not have jurisdiction pursuant to RIDA.[3]

This court does, however, have jurisdiction to review a habeas corpus challenge to an alien's detention. Title 8 U.S.C. § 1231 provides the statutory authority for the detention and removal of aliens ordered removed. Section 1231(a)(6) authorizes the Attorney General to either release or continue to detain an alien. Section 1231(a)(6) also provides that an alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(c), 1227(a)(2), or 1227(a)(4) of this title, or who has been determined by the Attorney General to be a risk to the

---

[3] In *Dragenice v. Ridge*, 389 F.3d 92 (4th Cir. 2004), the Fourth Circuit concluded that the district court had not been without jurisdiction to consider Dragenice's § 2241 nationality claim in the context of a removal proceeding. The facts are inapposite here and, in any event, the original *Dragenice* decision was issued prior to the change in the law under RIDA. *See Dragenice v. Gonzales*, 470 F.3d 183, 186-87 (4th Cir. 2006) (RIDA divests district courts of habeas review over challenges to final administrative order of removal).

community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

In *Zadvydas v. Davis,* 533 U.S. 678 (2001), the Supreme Court held that post-removal-order detention under § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas,* 533 U.S. at 689. However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. After six months, if an alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 700. If the Government response fails, the petitioner may be entitled to release from detention. *Id. see also Clark v. Martinez*, 543 U.S. 371 (2005) (six-month presumptively reasonable period of post-removal-order detention set out under *Zadvydas* applies to inadmissible aliens).

Petitioner's custodial status does not violate *Zadvydas*. He is not currently detained. Further, he has been told that travel documents have been obtained from the Chinese consulate and that his removal will be effected prior to the October expiration of his Chinese passport. Accordingly, any challenge to his custodial situation is without merit. Petitioner's challenge to his detention is denied.

IV. CONCLUSION

Finding that this district court has no jurisdiction over Petitioner's request for a stay of removal pending a ruling on his application for adjustment and that there is no merit to any challenge to his custodial situation, the case shall be administratively closed. That portion of the Petition which attacks Petitioner's removal shall be transferred to the United States Court of Appeals

for the Fourth Circuit. The Emergency Motion to Stay Removal shall be denied.[4] A separate Order follows.



Date:   August 6, 2009                              //s//
                                            Alexander Williams, Jr.
                                            United States District Judge

---

[4] The Court observes that counsel filed this Petition at the eleventh hour although he was aware of his client's possible deportation as early as June 16, 2009.  This is the second time in three months that counsel has filed a last minute petition.  *See Ni v. Dillis*, Civil Action No. CCB-09-1359  (D. Md.).  He is counseled to avoid this dilatory practice where possible.